| | |
|---|---|
| LETICIA WOODS, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br> v.<br><br>ARSTRAT, LLC,<br><br>    Defendant. | Case No.: 20-cv-1174<br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Leticia Woods is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendants sought to collect from Plaintiff a debt incurred for personal, family, or household purposes.

5. Defendant ARstrat, LLC ("ARstrat") is a foreign limited liability company with its primary offices located at 9800 Centre Parkway, Suite 1100, Houston, Texas 77036.

6. ARstrat is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7. ARstrat is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes. *See* http://arstrat.com/about-us/ (visited January 29, 2020) ("ARstrat is an industry leading collection and bad debt resolution provider for the healthcare industry.")

8. ARstrat is a debt collector as defined in 15 U.S.C. § 1692a.

## FACTS

9. On or around August 16, 2019, ARstrat mailed a debt collection letter to Plaintiff regarding one or more alleged debts. A copy of this letter is attached to this Complaint as <u>Exhibit A</u>.

10. Upon information and belief, the alleged debt(s) referenced by <u>Exhibit A</u> were incurred for personal, family, or household services, namely medical services.

11. Upon information and belief, <u>Exhibit A</u> is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

12. Upon information and belief, <u>Exhibit A</u> is a form debt collection letter, used by Defendant to attempt to collect alleged debts.

13. Upon information and belief, <u>Exhibit A</u> was the first written communication Plaintiff received from Defendant regarding the alleged debt referenced in <u>Exhibit A</u>.

14. <u>Exhibit A</u> contains language that largely reflects the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g(a), requires debt collectors provide along with, or within five days of, the initial communication:

2

> MAYO CLINIC - ROCHESTER has placed this account with our office for collection.
>
> Unless you notify this office within thirty days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within thirty days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within thirty days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

15. The first page of <u>Exhibit A</u> instructs the consumer that there is "important information" on the reverse side of the letter:

> **See Reverse Side for Important Information.**

16. The reverse side of <u>Exhibit A</u> states:

> Insurance claims: If you would like ARstrat, LLC to assist you with an insurance claim for the services(s) referenced in this letter, please contact us at (866) 269-1731. Please be advised that ARstrat, LLC does not warrant, promise, represent, or guarantee that it will be able to collect insurance proceeds to pay your account or that the services will be covered by the insurance provided.

17. <u>Exhibit A</u> is deceptive, misleading, and confusing to the unsophisticated consumer.

18. The "important information" on the reverse side of <u>Exhibit A</u> instructing the consumer to "contact us at (866) 269-1731" for assistance "with an insurance claim for the services(s) referenced in this letter" is false, deceptive, misleading, and confusing to the unsophisticated consumer because it contradicts, overshadows, and confuses the statutory debt validation notice on the first page of <u>Exhibit A</u> by encouraging the consumer to forego her verification rights by communicating a certain type of dispute (insurance claims) orally rather than in writing. *Coulter v. Receivables Mgmt. Sys.*, 367 F. Supp.3d 307, 319 (E.D. Pa. 2019) ("Because the least sophisticated debtor could reasonably understand the challenged provisions of the

3

Collection Letter to instruct the consumer that an insurance-related dispute regarding the debt could be raised by calling RMS, when, in fact, a dispute of a debt must be in writing to be effective, the Court finds these provisions overshadowed and contradicted the validation notice in the Letter in violation of § 1692g."); *Morello v. AR Res., Inc.*, No. 17-13706 (FLW) (DEA), 2018 U.S. Dist. LEXIS 138713, at *29 (D.N.J. Aug. 16, 2018); *Kassin v. AR Res., Inc.*, No. 16-4171 (FLW), 2017 U.S. Dist. LEXIS 41187, at *10 (D.N.J. Mar. 22, 2017) (letter encouraging debtors to submit insurance claims by phone violated FDCPA because "the letter instructs that issues with coverage under an insurance policy can be handled by telephone"); *see also Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 347-48 (7th Cir. 2018) (oral disputes do not entitle consumers to verification rights, including "the ultimate power vis-à-vis debt collectors: the power to demand cessation of all collection activities").

19. 15 U.S.C. § 1692g(a)(4) states:

> (a) Notice of debt; contents
>
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> …
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector;

20. Upon receiving a *written* dispute from the consumer within the 30-day debt validation period, the FDCPA requires the debt collector to contact the creditor and obtain verification of the debt before conducting any further collection efforts. 15 U.S.C. § 1692g(b):

4

**Disputed debts**

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

21. Congress adopted a specific FDCPA dispute procedure in 15 U.S.C. § 1692g "to eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." *Majeski v. I.C. Sys.*, 2010 U.S. Dist. LEXIS 1830, at *22 n.6 (quoting *Swanson v. Southern Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988).

22. <u>Exhibit A</u> confusingly and misleadingly directs the consumer to notify Defendant about disputes concerning insurance without informing the consumer that oral disputes do not trigger verification.

23. Billing for medical services, which involves several levels of billing based on numerous accounts, providers, and insurers, is extraordinarily complicated and confusing to consumers. *E.g.,* Wisconsin Department of Agriculture, Trade, and Consumer Protection, "Consumer Protection Fact Sheet – Medical Billing," https://datcp.wi.gov/Pages/Publications/MedicalBilling147.aspx) (accessed: July 17, 2020) ("Be

5

prepared to receive separate bills for physician services such as anesthesiologist, radiologist or surgeon. This means you may receive several billings from just one visit to the hospital or clinic.").

24. Indeed, the three major consumer reporting agencies (Equifax, Experian, and TransUnion, collectively the "CRAS") have all recognized that many purported "debts" are only considered outstanding or delinquent because of potential disputes and confusion about whether the consumer's insurer may or should be covering all or part of the claim, or whether the claim may be subject to adjustments to the portion the consumer is required to pay based on agreements between the consumer's insurer and the medical provider. *See Slogaski v. Amcol Systems, Inc.*, Case No. 18-c-1604-LA, Dkt. No. 19 (order denying motion to dismiss) (slip op.) at 1-2 (E.D. Wis. July 12, 2019) (noting that the CRAs "agreed to prevent the reporting and display of medical debt when the date of the first delinquency is less than 180 days prior to the date the account is reported" in order "to allow consumers time to resolve the disputes with insurers and delays in payment that frequently arise in the context of medical billing.").

25. For this reason, debt collectors overshadow the consumer's statutory validation rights by directing them to notify the debt collector about insurance claims by telephone. *Coulter*, 367 F. Supp. 3d at 319; *Morello*, 2018 U.S. Dist. LEXIS 138713, at *29; *Kassin*, 2017 U.S. Dist. LEXIS 41187, at *10.

26. Defendant's instruction in Exhibit A that the consumer may communicate insurance claims by telephone rather than in writing contradicts and overshadows the validation notice.

27. Plaintiff read Exhibit A.

28. Plaintiff was confused and misled by Exhibit A.

6

29. Plaintiff was unsure about whether an insurer was responsible for paying all or a portion of the debt referenced in Exhibit A, and was unsure about whether her insurer had an agreement with the medical provider that limited the amount that the medical provider could seek from the consumer and, if so, whether the medical provider and Defendant were seeking amounts in excess of what was agreed upon.

30. The unsophisticated consumer would be confused and misled by Exhibit A.

31. Plaintiff had to spend time and money investigating Exhibit A, and the consequences of any potential responses to Exhibit A.

### *The FDCPA*

32. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp. Sols.*, No. 17-cv-1671, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018); *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS

113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing *Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes … do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

33. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection

8

practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

34. Plaintiffs who allege that debt collectors misrepresent material information in their dunning letters have standing, as such misrepresentations risk injury to interests expressly protected by Congress in the FDCPA. *See Degroot v. Client Servs.*, 2020 U.S. Dist. LEXIS 6677 (E.D. Wis. Jan. 15, 2020) ("[A]n informational injury can be concrete when the plaintiff is entitled to receive and review substantive information."); *Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt.*, No. 18-CV-1484, 2019 U.S. Dist. LEXIS 134377 *8-9 (E.D. Wis. Aug. 9, 2019) ("Protecting consumers from misinformation is one of the 'concrete interest[s] that Congress sought to protect,' under the FDCPA. If a consumer is misinformed, rather than merely uninformed, the risk of harm is greater.") (internal citations omitted); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right

9

to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

35. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

36. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

37. 15 U.S.C. § 1692f generally prohibits "any unfair or unconscionable means to collect or attempt to collect any debt."

38. 15 U.S.C. § 1692g states:

(a) **Notice of debt; contents**

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

…

(4) a statement that if the consumer notifies the debt collector **in writing** within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's **written request** within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

(emphasis added)

39. 15 U.S.C. § 1692g(b) states, in part, that "collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."

10

40. The Seventh Circuit has held that a debt collector must disclose the debtor's rights to obtain verification in a non-confusing manner, and must ensure its representations to debtors do not contradict the validation notice. *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997) ("the debt collector may not defeat the statute's purpose by making the required disclosures in a form or within a context in which they are unlikely to be understood by the unsophisticated debtors who are the particular objects of the statute's solicitude.").

## COUNT I – FDCPA

41. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

42. The instruction in Exhibit A that the consumer may submit insurance disputes by telephone is confusing, misleading, and unfair to the unsophisticated consumer because it contradicts the requirement that the consumer must submit any dispute in writing in order to obtain the full protections of the FDCPA.

43. Defendant violated 15 U.S.C. §§ 1692e, 1692e(10), 1692f, 1692g(a)(4), and 1692g(b).

## CLASS ALLEGATIONS

44. Plaintiff brings this action on behalf of two prospective classes.

45. Class I (the "Wisconsin Class") consists of:

> (a) all natural persons in the state of Wisconsin, (b) to whom Defendant mailed a collection letter in the form of Exhibit A to the Complaint in this Action, (c) regarding an alleged debt which was incurred for personal, family, or household purposes, (d) where the letter was mailed between July 30, 2019 and July 30, 2020, inclusive, and (e) the letter was not returned by the postal service.

46. Class II (the "Nationwide Class") consists of:

(a) all natural persons in the state of Wisconsin, (b) to whom Defendant mailed a collection letter in the form of <u>Exhibit A</u> to the Complaint in this Action, (c) regarding an alleged debt which was incurred for personal, family, or household purposes, (d) where the letter was mailed between July 30, 2019 and July 30, 2020, inclusive, and (e) the letter was not returned by the postal service.

47. Upon information and belief, each class is so numerous that joinder is impracticable.

48. Upon information and belief, there are more than 50 members of each class.

49. There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA.

50. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

51. Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

52. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## **JURY DEMAND**

53. Plaintiff hereby demands a trial by jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: July 30, 2020

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com